IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES LEE CECIL, Jr. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-cv-00295 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| SOUTHWEST VIRGINIA REGIONAL | ) | United States District Judge |
| JAIL AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

James Lee Cecil, Jr., a Virginia inmate proceeding pro se, alleges that the Southwest Virginia Regional Jail Authority (SWVRJA) has created a policy that unlawfully charges inmates excessive money for property damage in violation of due process. Defendant moves for summary judgment. For the following reasons, defendant's motion will be granted.

## I. BACKGROUND

### A. Complaint Allegations

Cecil has been housed at a SWVRJA facility since approximately November 22, 2018. (Compl. ¶ 5, Dkt. No. 1.)[1] In that time, Cecil has been charged over $400.00 for "property damage." (*Id.* ¶ 6.) Cecil alleges that these charges are for damages not posted in the facility or the inmate handbook. (*Id.* ¶ 7.) According to Cecil, the facility charged him $100 for the replacement of a sprinkler head that was damaged, but the facility pays only $15.00 for the item. (*Id.* ¶ 8.) Cecil alleges that his due process rights were violated because the hearing committee, consisting of SWVRJA employees, has a financial incentive to uphold his punishment. (*Id.* ¶ 9.)

---

[1] The record reflects that Cecil was being housed at the facility located in Duffield, Virginia, at the times relevant to this lawsuit. (Dkt. No. 36-2 at 3.)

Cecil complains that the SWVRJA is a non-profit organization attempting to extract a profit from himself and other inmates. (*Id.* ¶ 10.) Cecil contends that he should be responsible for the cost of the sprinkler head only, not for other costs. (*Id.* ¶ 11.)

Cecil cites page 24 of the SWVRJA inmate handbook which states "[i]f you have damaged or found to be in possession of damaged jail property, you will be charged for the replacement of that property by having it's value deducted from your inmate account." (*Id.* ¶ 12.) Cecil also alleges that the facility has charged him $50.00 for "water damage" or "water cleanup fee" on several occasions, but the inmate handbook does not authorize the imposition of such a fee. (*Id.* ¶¶ 13–14, 16–18.) Cecil maintains that he has never damaged any property due to water damage, nor is there any documentation showing damage. (*Id.* ¶ 15.)

Cecil alleges that he has exhausted all available remedies. (*Id.* ¶ 24.) He requests declaratory and injunctive relief, $385.00 in damages, costs, and $1,000 in punitive damages. (*Id.*, Relief Requested.)

**B. Facts in Support of SWVRJA's Motion for Summary Judgment**

SWVRJA has a written disciplinary procedure that is outlined in the Inmate Handbook. (Declaration of Jeannie Patrick (Patrick Decl.), Dkt. No. 20-1; Ex. 1 at 10–17, Dkt. No. 20-2.) The handbook outlines the procedures that apply in disciplinary proceedings, the violations for which penalties can be imposed, and the potential penalties that can be imposed after a finding of guilt during a disciplinary proceeding. (Ex. 1 at 10–17.) Potential penalties include "monetary reimbursement for replacement or repairs," and inmates are notified that they "will be charged for replacement of [damaged] property by having its value deducted from their inmate account." (*Id.* at 11, 26.) Cecil was oriented to the disciplinary procedures in the Inmate Handbook when

2

he arrived at SWVRJA and had full knowledge of the information contained in the Inmate Handbook. (Ex. 2, Dkt. No. 20-3.)

SWVRJA has an approved list of repair and replacement charges for certain commonly encountered property damage. If an inmate is found guilty of damaging any type of property on the list, he is subject to a deduction from his inmate account for the property damage in the amount listed. The fines included on this list represent the actual costs for repair and/or replacement, and SWVRJA does not profit from imposing these fines after an inmate is found guilty of causing the property damage in a disciplinary proceeding. (Ex. 3, Dkt. No. 20-4.)

On February 15, 2019, Cecil was charged with attempting to flood an area in the prison, after being observed on camera. An Inmate Offense Report was issued and given to Cecil. Cecil refused to sign it and refused to appear at the hearing scheduled for February 17, 2019. Following the hearing, Cecil was found guilty based upon officer statements and review of video footage. The penalty included payment of a $50 cleanup fee for flooding the area. (Ex. 5 at 1–2, Dkt. No. 20-6.) Cecil was provided with a copy of the Disciplinary Hearing Form, which notified him of the hearing committee's decision and the penalties imposed. (Patrick Decl. ¶ 9.) The $50 cleanup fee was deducted from Cecil's inmate account on February 18, 2019. (Ex. 4 at 9, Dkt. No. 20-5.) Cecil did not appeal the written decision of the hearing committee, nor did he file a grievance. (Patrick Decl. ¶ 11.)

On February 17, 2019, Cecil was again charged for attempting to flood an area after water was observed coming from his cell into the pod's day room. Once again, an Inmate Offense Report was issued and given to plaintiff. Cecil refused to sign it and refused to appear for the hearing scheduled for February 20, 2019. Following the hearing, Cecil was found guilty based upon officer statements and review of video footage. The penalty assessed to Cecil

3

included payment of a $50 clean up fee for flooding the area. (Ex. 5 at 3–4.) Cecil was provided with a copy of the Disciplinary Hearing Form, which notified him of the hearing committee's decision and the penalties imposed. (Patrick Decl. ¶ 9.) The $50 cleanup fee was deducted from Cecil's inmate account on February 21, 2019. (Ex. 4 at 9.) Cecil did not appeal the written decision of the hearing committee, nor did he file a grievance. (Patrick Decl. ¶ 11.)

On February 20, 2019, Cecil was charged with attempting to flood an area after being observed on camera doing so. Cecil signed the Inmate Offense Report and appeared at the hearing on February 21, 2019. Cecil pleaded guilty at the disciplinary hearing but was not assessed a cleanup fee. (Patrick Decl. Ex. 7, Dkt. No. 20-8.) Cecil did not file an appeal.

On February 21, 2019, Cecil was charged with the more serious offense of tampering with fire control systems. An Inmate Offense Report was issued and given to Cecil. Cecil refused to sign it but he appeared at the hearing held on February 25, 2019, and pleaded not guilty. Following the hearing, Cecil was found guilty based upon the review of video footage and officer statements. The penalty assessed following the hearing included fees of $50 for flood damage cleanup and $100 for replacement of a sprinkler head. Cecil was provided with a copy of the Disciplinary Hearing Form, which notified him of the hearing committee's decision and the penalties imposed. (Patrick Decl. ¶ 9.) The $100 sprinkler head fee and $50 cleanup fee were deducted from Cecil's inmate account on February 25, 2019. (Ex. 4 at 10.) Cecil appealed the results of his disciplinary hearing, but his appeal was denied. (Ex. 5 at 7.)

On March 2, 2019, Cecil was charged again with attempting to flood an area after being observed on camera doing so. An Inmate Offense Report was issued and given to Cecil. Cecil refused to sign it and refused to attend the hearing held on March 7, 2019. Following that hearing, Cecil was found guilty based upon officer statements and review of video footage. The

penalty assessed included a $50 cleanup fee. (Ex. 5 at 8–9.) Cecil was provided with a copy of the Disciplinary Hearing Form, which notified him of the hearing committee's decision and the penalties imposed. (Patrick Decl. ¶ 9.) The $50 cleanup fee was deducted from Cecil's inmate account on March 8, 2019. (Ex. 4 at 10.) Cecil did not appeal the written decision of the hearing committee, nor did he file a grievance. (Patrick Decl. ¶ 11.)

Invoices for the most recent purchases of sprinkler heads at SWVRJA are for two different sprinkler heads at an individual cost of $96.46 and $40.83 respectively. The Duffield facility where Cecil was housed utilizes five different types of sprinkler heads, two of which are identified in these invoices. SWVRJA does not maintain records that would identify the type of sprinkler head that Cecil damaged or the type of sprinkler head that was used to replace the one damaged by Cecil. (Supplemental Declaration of Jeannie Patrick (Supp. Patrick Decl.) ¶ 8, Dkt. No. 36-1.) Additional costs to SWVRJA related to the replacement of a sprinkler head or flooding of a cell include: (1) the cost of the water that was used to flood the area by activating sprinkler heads, which discharge voluminous amounts of water in a very short period of time; (2) stocking and inventory costs for keeping a certain amount of replacement sprinkler heads on hand in order to be able to quickly replace ones that are damaged by inmates for the safety of all inmates and staff in the facility; and (3) the costs of cleanup, which includes costs associated with laundering or cleaning items that become soaked by flood waters, costs for mops, brooms, squeegees, cleaning products/solutions, and the floor scrubber that is used to vacuum up water. (*Id.* ¶ 9.)

II.  DISCUSSION

A.  **Summary Judgment Standards**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

B.  **Due Process**

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an

6

expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

To establish a constitutionally protected liberty or property interest, a prisoner must demonstrate an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Courts in this district have generally held that small monetary fines do not trigger constitutional due process protections for prison inmates. *See Johns v. Messer*, Civil Action No. 7:19-cv-00207, 2020 WL 265232, at *4 (W.D. Va. Jan. 17, 2020) ($15 fine does not implicate due process protections) (collecting cases). These cases involve fines that are smaller than the $50 and $100 fines imposed in this case, but at least one case outside of this circuit has found that a $50 fine does not trigger due process protections. *See Byrd v. Cornell Corr., Inc.*, 60 F. App'x 191, 193–94 (10th Cir. 2003). Prisoners such as Cecil voluntarily place funds into inmate trust accounts, and Cecil was fully aware that some of those monies could be removed to pay disciplinary fines. *See DePaola v. Clarke*, Case No. 7:17-cv-00028, 2019 WL 1370882, at *4 n.8 (W.D. Va. Mar. 26, 2019).

Even if Cecil was entitled to the protections of due process, the process afforded by SWVRJA passes constitutional muster. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). If such a disciplinary proceeding subjects the inmate to a loss of a constitutionally protected interest, the inmate must receive: (1) advance notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the

disciplinary action. *Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). As discussed above, for each of the fines imposed, Cecil was given notice of the charge against him (*see, e.g.*, Ex. 5 at 3 ("Summary of offense: At approx. 19:40 Inmate James Cecil flooded his cell and the water then came into the pod's day room.")), an opportunity to present evidence in his defense at a hearing (*see id.* ("Advisement of rights")), and a written statement explaining the evidence and reasons to support the fine, (*see id.* at 4 ("Reasons for Decision: Officers Statements. Video Footage. Inmate refused hearing.").)

Cecil argues that his due process rights were violated because the potential fines are not listed in the inmate handbook. Due process does not require advance notice of all potential penalties for prison misconduct. *See Freeman v. Carroll*, 506 F. App'x 694, 703 (10th Cir. 2012) ("Neither *Wolff* nor *Hill* states that due process requires notice of potential sanctions in addition to notice of the disciplinary charges . . . . No federal circuit court has recognized a right to notice of penalties in prison disciplinary hearings."). Cecil also contends that prison officials have a financial incentive to uphold his fines. Due process requires an impartial decision maker, *see Wolff*, 418 U.S. at 571, but Cecil must provide facts to show that the decision maker displayed a "level of bias that made fair judgment impossible." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Cecil offers no evidence, only conclusory allegations, that the hearing committee was not impartial. *See Bauer v. Warden FCI Williamsburg*, Civil Action No. 6:16-807, 2017 WL 1284858, at *5 (D.S.C. Jan. 6, 2017) (recommending that summary judgment be granted because the prisoner "failed to provide any evidence—other than his own conclusory allegations—that the DHO was not an impartial decision maker").

Finally, Cecil complains that the he was fined more than the actual cost to replace what was broken and to clean up the mess he created. Due process is satisfied, however, so long as some evidence supports the disciplinary action. *See Hill*, 472 U.S. at 456 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."). The "relevant question" is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990). Here, SWVRJA provided evidence that sprinklers can cost anywhere between $40 and $96 (possibly more), and that there are significant costs associated with cleaning up the mess created when the sprinkler system is activated. Thus, the fines imposed by SWVRJA have a basis in fact. *See Figueroa v. Johnson*, No. ACTION 2:03-cv-609, 2004 WL 3781819, at *4 (E.D. Va. May 13, 2004) ("Evidence in the record illustrates that the cost to repair the damaged sprinkler head was $46.00. Additionally, flooding a prison cell requires clean-up and may cause damage. The court finds that there is sufficient evidence to support the disciplinary action taken for plaintiff's convictions.") (citing *Hill*, 472 U.S. at 456).

For these reasons, SWVRJA is entitled to summary judgment on Cecil's due process claim.

III. CONCLUSION

For the above-stated reasons, SWVRJA's motion for summary judgment (Dkt. No. 19) will be granted. The court will enter an appropriate order.

Entered: February 27, 2020.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge